DICKINSON *v.* WORTHINGTON and others.

*(Circuit Court, D. Maryland. January 21, 1880)*

1. WILL—BEQUEST IN TRUST—CHARGE ON LAND—RELEASE.

Where a testator gave money in trust to a trustee, to be by him invested and held in trust for the use of the beneficiary for life, and after her death for others, the will declaring the money to be until paid a charge on the lands devised by him, and the will not expressly authorizing any one to give an acquittance for the money so charged on the lands devised, a paper, signed and acknowledged by the beneficiary of the trust and no one else, containing a mere statement made by her that the money had been invested to her satisfaction; and that she released the lands and the trustee from all liability therefor, is not a release, nor is it effectual for any purpose whatever.

2. RELEASE OF MORTGAGE—BENEFICIARY TO JOIN.

Where the trustee invested certain money in a mortgage on the land devised, he had no power under the limitations in the will to collect the amount due on the mortgage and release the same without the consent of the beneficiary, evidenced by her being a party to the deed of release, and signing, sealing, and acknowledging it. Such mortgage stands unaffected by the release.

3. SAME—WHEN EFFECTUAL.

Where the trustee had made a loan and taken a mortgage to secure it, and the loan being long overdue, he would, in the absence of some express restriction in the will, have the right to receive the money and the power to execute a release of the mortgage.

**4. SAME—WHEN INEFFECTUAL.**

A release of a mortgage without a surrender of the note is ineffectual. So, where the note secured by a mortgage is passed to a third party, a subsequent release of the mortgage by the mortgagee, without the surrender of the note, is void, as the assignment of the note operates as an assignment of the mortgage.

**5. SALE OF LAND UNDER ORDER OF COURT—LIEN FOR PURCHASE MONEYS.**

Where the trustee was authorized by the court to make a sale of certain land and simultaneously invest the purchase money in a mortgage on the same land, and he sold the land under the order of the court, but received no consideration, and no mortgage was ever given, the trustee had no authority, without a further order of the court, to afterwards receive the purchase money in cash, or make a deed for the land; and the proceedings in the court ordering the sale and the investment of the purchase money were sufficient to put any one dealing with the property upon inquiry as to why the mortgage had not been given. The lien for the purchase money was not lost by the execution of the deed by the trustee.

MORRIS, D. J. The principal questions in this case arise from a conflict between the claims of persons beneficially interested in certain trusts created by the will of Samuel Worthington, late of Baltimore county, deceased, and the alleged prior rights of a mortgagee to whom certain lands, devised by said testator, have since his death been conveyed.

The solution of these questions requires me to interpret the provisions of the will, and to pass upon the legal effect to be given to certain conveyances executed by parties interested thereunder; but as all these documents fully appear in the proceedings, I shall not attempt to make a statement of their contents or of the allegations of the bill, and will proceed to consider the issues which have been made and argued.

1. As to the paper dated the seventh of January, 1876, purporting to be a release from Mary E. L. Dickinson to Samuel W. Worthington, (Exhibit T.) The testator gave $7,000 to Samuel W. Worthington to be by him invested and held in trust for the use of Mary E. L. Dickinson for life, and after her death for others. This $7,000 was declared to be, until paid, a charge upon the lands which were devised to his sons, into whosesoever hands the lands should go. This sum of $7,000 has never been paid or invested, but Samuel W. Worthington procured from Mrs. Dickinson the paper called a release, which is designated in these proceedings as Exhibit T, and had it recorded; and it appears that subsequent encumbrancers have relied upon this paper as releasing the land from the payment of this charge.

The will does not expressly authorize any one to give an acquittance for this sum so charged upon the testator's land. The utmost

that could be claimed would be that, as the testator directed the money to be paid to Samuel W. Worthington, trustee, he was authorized to execute an acquittance and release of the land, and that a stranger who innocently relied upon such a release executed by him could not be injured by the fact that the money had not been actually paid. Conceding this to be so it does not touch the present case. There is no release or acquittance executed by Samuel W. Worthington upon which any one could have relied. Exhibit T is a paper signed and acknowledged by Mrs. Dickinson and by no one else, and is in fact nothing more than a statement made by her that the money had been invested to her satisfaction, and that she released the lands and the trustee from all liability therefor. This was a gratuitous and an idle statement on her part, not true in point of fact and of no effect whatever. She was not the person to receive the money or to invest it; she was not even to be consulted as to its first investment. The paper was nugatory for any purpose whatever. Granting that, although she was a married woman, she could, under the powers given to her by the will, have receipted in advance for all the interest thereafter to accrue during her life-time, or could have assigned her life interest absolutely, such effect cannot be given to this paper, as it does not, upon its face, purport to do any such thing. Nor is it a paper which is evidence of any purpose or contract on her part to do anything with reference to said money charged on the land, or the interest thereon, which is within the limits *jus disponendi* under the will.

I am, therefore, of opinion that the $7,000 charged by the testator upon his lands stands just as if the paper, Exhibit T, had never been executed.

2. With regard to the $2,000 held by Samuel W. Worthington as trustee for Mrs. Dickinson, and invested by him in a mortgage executed to him by Thomas L. Worthington upon a part of the land devised by the testator, which mortgage was subsequently released by said trustee without Mrs. Dickinson joining in the release, I think it plainly appears from the express limitations contained in the bill that the trustee had no power "to collect the amount due on the mortgage, and release the same," without the consent of Mrs. Dickinson, evidenced by her being a party to the deed of release, and signing, sealing, and acknowledging it.

This mortgage, therefore, stands unaffected by the release, (Exhibit L.)

3. With regard, however, to the $2,000 held by said Samuel W. Worthington as trustee for Mrs. Thompson, and in like manner invested by him in a mortgage of part of said lands, I do not find in the will the same limitation upon the power of the trustee to release the mortgage. The trustee having made the loan and taken the mortgage to secure it, and the loan being long overdue, he would, in the absence of some express restriction, have the right to receive the money, and the power to execute a release of the mortgage. He did execute a proper formal release, (Exhibit V,) in which he recites that the entire loan and the interest thereon had been fully paid, and that the mortgagor was entitled to have the land released. Upon this release the subsequent encumbrancer testifies that he relied, and as there is no evidence of facts which should have put him upon inquiry as to the truth of the recitals, I am of opinion that he had a right to rely upon it.

It is urged that as it was recited in the mortgage that a promissory note had been made and delivered by the mortgagor to the trustee for the $2,000 loaned, and as it does not affirmatively appear that, when the release was executed the note was given up to be cancelled, and as it is now known that the loan was not in fact paid, that the presumption is that the note was not surrendered; and it is contended that as the mortgage was merely security for the note, the release without a surrender of the note was ineffectual, and that the respondent Wight was guilty of laches in not having required the production and surrender of the note. It is true that if a promissory note, secured by a mortgage, has been passed by the mortgagee to a third party the subsequent release of the mortgage by the mortgagee without surrender of the note is void, upon the principle that the assignee of the note is entitled to the security given for its payment, and that the assignment of the debt operates as an assignment of the mortgage. In this case, however, it does not appear what has become of the note. It could not have been assigned, and, if in existence, it must have been in the hands of the trustee at the time he executed the release. The presumption is that he surrendered or cancelled it. Nor does it appear to me that the fact that this release, which bears the same date as the mortgage to Wight, was not acknowledged by the trustee until the next day, alters its effect. It is clear from Wight's testimony that it was a condition precedent to the loan of the money by him that this release should be first executed and the property relieved from the mortgage thereby intended to be released; and

as this release and the mortgage to Wight were recorded at the same moment, it is evident that Wight did, as he testifies he did, rely upon this release in making the loan.

4. The next question is as to the validity of the deed executed by Samuel W. Worthington, trustee, to Thomas L. Worthington, (Exhibit Q,) purporting to convey the one-fifth interest in the lands which had descended to Martha E. Worthington under the terms of the will by the death of her brother George. Proceedings were instituted in equity in the circuit court for Baltimore county, and a decree was obtained ratifying the sale of the said one-fifth interest to Thomas L. Worthington for $2,000. This decree was dated the sixteenth of July, 1867, and authorized Samuel W. Worthington, as trustee, on the payment of $2,000, to execute a deed to the purchaser for the interest in the land sold to him. On the same day, however, there was filed in said cause the petition of the trustee asking the court to direct him to invest the $2,000 of purchase money in a mortgage to be executed by the purchaser upon the property so sold, and on the same day the court did pass an order directing the trustee to invest the $2,000 of purchase money in a mortgage from the purchaser of the property sold to him, "to be executed simultaneously with the deed." The deed was dated the sixteenth of July, 1867, acknowledged the twenty-seventh of April, 1869, and recorded the fifth of March, 1870. No mortgage was ever executed as directed by the order of the court, and, although the deed recites that the trustee had received the purchase money, it now appears that it never has been paid.

The order of the court of the sixteenth of July, 1867, is a peremptory direction to the trustee to invest the money in a mortgage of the property sold, and take the mortgage simultaneously with the execution of the deed; and it would seem that the trustee, having no discretion left to him, could not, without further order of the court, disregard its direction and accept the purchase money in cash.

The order of the sixteenth of July had changed the terms of the decree, and had changed the duties and powers of the trustee; and if thereafter the purchaser should offer to pay the money and refuse to give a mortgage, it might be quite to the disadvantage of the *cestui qui trust*, and the trustee would have no right to accept the money without first obtaining the direction of the court. But whether the trustee could or could not, upon actually receiving the purchase money instead of the mortgage, have given an effectual deed without further order of

the court, it appears that the purchaser did get the deed without paying anything, and I am of opinion that there was sufficient disclosed by the records of the court to put any one dealing with property upon his guard, and upon inquiry as to why it was that the mortgage had not been given.

The deed itself is dated the sixteenth of July, 1867, the very day that the order was passed requiring that the mortgage should be taken simultaneously with its execution; and, although the deed was not acknowledged until long afterwards, I think a duty was imposed upon any one dealing with the property, not finding the mortgage upon the land records, to know why it had not been given, and to satisfy himself, at least, that the purchase money had actually gone into the hands of the trustee. The order directed that the mortgage should be taken simultaneously with the giving of the deed; and the executing of the deed, without taking the mortgage, was plainly a violation of his duty by the trustee, and subsequent purchasers or encumbrancers had no right to rely simply upon his acknowledgment in the deed that the money had been paid.

I must hold, therefore, that the lien for this $2,000 of purchase money has not been lost by the execution of the deed by the trustee.

It appearing, upon the whole case, that the complainant is entitled to the relief prayed for in the bill, I will sign a decree for the sale of the lands as prayed.